The judgment of the court was pronounced by
Rost, J.
Leonard B. Compton and John Compton were partners in planting, and owned in common several tracts of unimproved land.
On the 3d of February, 1836, they dissolved the partnership. Each retained a certain number of slaves ; and Leonard sold to John the undivided half of the remainder of the property. The act states, that the sale is made for, and in consideration of, the sum of $100,000, payable in twenty equal payments, from the 1st of March, 1837, with interest at the rate of seven per cent per annum, payable in advance.
The purchaser gave his notes, forty in number, for the annual installments of the principal and the stipulated amount of interest due each year. The gross amount of these notes for the principal and interest was $173,500. They were *616 payable to the order of the vendor, stipulated on their face to be payable for value received, with interest at the rate of ten per cent per annum from maturity if not then paid, and were secured by a special mortgage on a portion of the property sold.
Leonard B. Compton received payment of five of these notes, and a part of another. Some years after his death, his executor instituted the present action upon the notes which had matured at the time. He prays judgmenton the notes due for the principal and interest, with interest thereon at the rate of ten per cent per annum from their maturity; and further, that the property specially mortgaged be sold under the mortgage, and the entire property conveyed, under the vendor’s privilege, to meet the amount due and the notes not matured, according to the terms of the contract.
The defendant resists the claim, and avers that he is only bound for the principal of the price, without any interest, the whole balance of the indebtedness charged being made up of compound, illegal and usurious interest.
He further avers, that he has made large' payments on his purchase, some of which were through error made on account of the illegal interest. He asks that those payments be imputed on the capital of the price, and that the interest notes be avoided and cancelled.
The district court sustained the plea of usury, cancelled the interest notes, and gave judgment on the notes for the principal of the price, with legal interest from their maturity, deducting therefrom such of the payments made in relation to which there had been no imputation. The plaintiff has appealed.
It is shown, that if nothing was paid on this contract before the maturity of the last installment, the aggregate sum then due for the purchase of the property would be $379,405, and that the interest on the price stipulated would be at the rate of very near fourteen per cent per annum.
The plaintiff urges, that although in the act of sale the word interest is used, and the act, speaks of the payment of interest annually and in advance on the principal, the notes purporting to be interest notes were not given for interest, in the usual’acceptation of that word, but formed an integral part of the price ; that a term of twenty years was given for the payment, and the real price agreed upon was $173,500.
That the seven per cent installments were not for a loan of-money or other movables, and did not come under article 2894 C. C., nor were they for damages dueffor delay in the performance of an obligation to pay money, which could alone bring them under article 1929. But that they were allowed as a consideration for the time given for the performance of the obligation, or if not for this, for the use and enjoyment of the property before the purchaser was required to pay for it; and that in either view those notes were not for interest, but for a part of the price.
That the stipulation in the contract of sale that John Compton should not be at liberty to pay at any time more than the annual payment due without the consent of the vednor, conclusively shows, that in the intent of the parties, the contract was entire, and the sum of $173,500 was constituted the price of the property sold.
That if any portion of the interest is illegal, it is only the stipulation to pay ten per cent on the interest notes, and that the plaintiff is entitled to recover the amount of all the notes subscribed by the defendant, with ten per cent interest on the notes given for the principal since they respectively became due.
*617 If it be true that the seven per cent installments are not interest, they are, of course, subject to none of the rules which govern interest; so that if the rate agreed upon, instead of being seven per cent had been twenty or fifty per cent, the plaintiffs’ counsel must be prepared to maintain that the contract would have been equally lawful.
To show that in a contract of sale the interest stipulated during the term granted is a part of the price, we are referred to Troplong, de la Vente, and the authorities he cites. That author says that under the denomination of price is included everything expended by the purchaser, which passes into the hands of the seller, whether under the name of the principal sum or of interest. In another place he says, that the word price has a very extensive signification, and includes everything which the purchaser disburses to obtain the enjoyment of the thing sold, wherefore, he continues, the following are included in the word price : 1. The sum of money stipulated as principal to serve as an equivalent to the thing sold. 2. Whatever may be added to maintain equality between the parties. 3. The interest of the price when any is due, &c. &c. Troplong, de la Vente, 161, 596. He does not say that interest in' such a case differs from other interest, or that it forms an integral part of the price ; but, on the contrary. expressly makes the distinction between the principal and the interest of the price. This distinction exists in the nature of things; to say that interest is not interest, or that it is principal, is a contradiction in terms. Interest is a part of the price for certain purposes. For instance, the vendor has for the interest the same privilege he has for the principal, and his right to claim the resolution of the sale for the non-payment of the price may be enforced in case of non-payment of the stipulated interest. But for all this, the interest does not form an integral part of the price. If, at the time of the sale, there had been dangers of eviction known to the purchaser, and after paying all the notes given by him he had been evicted, he would have been entitled to recover the price paid, under article 2481 C. C. The word price, in that article, means the principal sum, and does not include the interest. Again, if the property sold had been the dotal property of the vendor’s wife, he would have been bound to re-invest the price in real estate, and would have discharged that obligation by re-investing $100,000.
To show that the interest in this case is a part of the price, because it was given for the use and enjoyment of the property during the term granted, the plaintiffs’ counsel relies on the authority of Pothier.
Under the laws of France, at the time Pothier wrote, the lending of money on interest, no matter at what rate, was prohibited, and all such contracts were held to be usurious. Merlin Rep., Verbo Intérét.
Pothier, in the paragraph cited, writes in reference to that prohibition, and is discussing the question whether the interest accruing or stipulated under a sale of productive property is usurious; he states, that several doctors of the law cited by Fachin held it to be usurious, on the ground that usury consists in the profit derived from the loan made, or the credit given to the debtor; that the interest in such a case is stipulated as the price of the credit which the vendor gives, and that the purchaser does not owe it by the nature of the contract, because, having a term to pay, he is not in mora, and can therefore owe no interest by virtue of it.
Pothier answers, that it is not from the failure to pay that interest arises in the contract of sale ; that interest in such a case is not a profit made by the vendor on the credit he gives, but rather the price of the enjoyment of the thing *618 sold, and that it originates in this enjoyment and in the rule of equitj’’ which will not permit the purchaser to enjoy at the same time the thing and the price. Pothier, Contract of Sale, paragraph 285.
He holds that those interests are not usuree lucratoriee, which are illicit, but usuree compensatoriee, which all admit to be authorized. He does not say that the interest accruing on the price of the productive property is not interest, in the common acceptation of the tei'm, he only decides that it is not usurious interest.
The distinction between usuree lucratoriee and usuree compensatoriee, was resorted to by civilians for the pui'pose of moderating the injustice of the usury laws then in force; it may have been a justifiable evasion of an absurd prohibition, but it is unknown to our laws, and has no foundation in reason or truth.
The allowance of interest ex-mora on the price of productive property, while none is allowed on loans of money, without a stipulation to that effect, took its source in the idea that money is a barren thing which can produce no fx’uits. It is now admitted by all that the distinction is arbitrary, and that capital invested in other pui'suits of human industry produces fruits as well as what is termed productive px'operty. Thex’e is, therefore, no reason whatever to extend the distinction and to recognize between interest stipulated on the price of productive properly and other interest, differences which our laws do not contemplate.
It has been ui'ged, that the intei’est installments wexe not stipulated for intex-est as technically known to our laws, but were established for the term, that is, for the time given for the performance of the obligation.
If this were true, there would hardly be such a thing as interest known in contracts. Loans of money are always made on time, and, according to this doctrine, the interest stipulated during the term agreed upon would be a portion of the loan, and not interest, properly speaking. It is evident that in a legal point of view, the nature of the interest stipulated does not vaxy with the consideration of the contract in which it arises, and that in all contracts the consideration of which is money, the interests stipulated are not less interest because they may be viewed as a compensation for the term given by the creditor.
The only claim of the vendor in this case was a sum of money, and the only damages he could stipulate or receive for the term he gxanted was the interest authorized by law. Whether the delay in the performance of an obligation to pay money is stipulated in the contract or not, the interest accruing on that obligation is governed by art. 1929, C. C.
Interest stipulated on sales, and other synalagmatic contracts, is classed by Toullier with interest accruing on loans. See Toullier, Obligations, 265. This principle is not an innovation in jurisprudence, it has descended to us from the Roman law. “ Papinianus respondisse se referí, si converit, lit ad idem pretio non soluto, venditoxi duplum proesturetur, infraudem constitutiorum videri adjeetum quod usurara legitimam. excedit.” L. 13 ff de act empt.
It is recognized by many decisions of the courts of France, and by the following French commentators : Chardon, Traité de l’Usure, No. 20. Traité de la Fraude, No. 480. Duvergier, Traité de la Vente. Dumoulin, question 27. Merlin Rep. verbo Intérét, and the authorities he cites.
• Merlin says, that parties to a contract of sale may fix the price as they please. But when they are once agreed! as to what the price is, they cannot stipulate on it a higher rate of interest than the law authorizes. In this case the parties have agreed to fix the price at #100,000, and have minutely described in the sale each note given in payment of it, and also every note given for interest.
*619 The stipulation in the act that the purchaser shall not anticipate the payment of the notes given for the principal is subsequent to this, and totally unconnected with the agreement about the price. So far from changing the price from $100,000 to $173,000, it expressly keeps up the distinction between the price originally agreed upon and the interest upon it, placed as it is at the close of the act; the only inference to be drawn from it is that the creditor viewed the contract as a safe investment, and was unwilling to receive the price before it became due. Similar stipulations often take place in contracts of loan, and ought not to affect the character of the transaction.
We are satisfied that the vendor’s representatives, so far as the question of interest is involved, occupy precisely the same position which they would occupy if he had loaned the defendant one hundred thousand dollars, to be refunded in twenty yeai’s, and had taken from him for the principal and interest during that time the notes which he received, and stipulated that the defendant should not anticipate the terms of payment by the conti’act. In that case as in this the contract would be entire, and it would be equally true to say that the sum of $173,500 was constituted the consideration of the loan.
The intei’est of seven per cent stipulated in the sale, not being a part of the price, the next question is whether it has become tainted with usury by reason of the promise to pay interest at the rate of ten per cent upon all the notes given after maturity; and in solving that question, if the facts of the case and the law applicable to them present two aspects, under one of which the contract for interest would be entirely avoided, and under the other only avoided in part, the last intei'pretation must prevail.
It is urged, that even if the interest notes are not a part of the price, the contract is not usurious, because a disposition of the code authorizes interest to be charged upon interest. Article 1934, in which this provision is found, isas follows : “ Interest upon interest cannot be recovered unless it be added to the principal, and, by another contract, made a new debt. No stipulation to that effect in the original contract is valid.”
The corresponding article of the Old Code, identically the same as article 1154 Nap. Code, is as follows: “Interest on capital may produce interest, either by a judicial demand or by a special agreement, provided, that either in the demand or the agreement the interest in question be due at least for an entix’e year.”
Under this article it is a controverted question among the jurists of France whether the capitalization of interests can be stipulated in the original contract, or whether the interest must be due before the stipulation is made; eminent commentators maintaining the first proposition, and the French tribunals holding the second to be the correct interpretation of the law. Toullier’s Obligations, Nos. 270 and following. 10 Duranton, Nos. 494 and following. Maurin v. Robert, 27 Sirey, 2d part. p. 128. Old Code p. 270, art 54.
To put an end to all doubt on this subject, the framers of the Code of 1825, inserted in it the provision that no stipulation in the oi’iginal conti’act to pay interest upon interest should be valid.
This, as well as the other prohibition in the article, are founded on motives of public policy. They are intended to prevent the unjust advantage which conti’acts in this foi'm would give to the designing over the simple and ignoi'ant, and the utter l’uin of imprudent or unfortunate debtors, who, sleeping on the faith of such a conti'act, might suffer interest to accumulate upon intei'est indefinitely, until their indebtedness far exceed their means. This case offei's a striking instance of the wisdom and policy of the rule.
*620 The stipulation to pay interest upon interest is contained in the original contract. It is therefore void, and stands as if it had never been written.
It has been finally urged in argument, that if the defendant is entitled to relief, it can only be decreed to him by his replacing the plaintiff in the position in which he was at the time of the contract, that is by restoring the property and fruits.
Such a decree would not be warranted by the pleadings. The plaintiff might have sued for the resolution of the sale, on account of the non-payment of the price, and if he had, the property and fruits would have been restored to him. But he sues in affirmance of the sale, and claims the price. That only is the price which is a lawful consideration. The portion of it which is unlawful is as if it had not been written, and can produce no legal effect.
The contract before us is one in which damages for the delay given for the payment of money have been stipulated at a higher rate than the law authorizes.
But the stipulation to pay ten per cent on the interest notes after maturity, being void, the contract is not usurious. The conventional interest stipulated in the notes given for the capital of the price may be recovered ; and the interest notes remain valid ; but the plaintiff can recover no interest upon the interest notes. The disposition of the Old Code already referred to, that interest upon interest could be recovered after judicial .demand, having been left out in the New Code, it can only be recovered under art. 1934, when there has been a contract to that effect, after the interest became due.
The defendant has paid $8,757 without any imputation being made. The appellant complains that the district judge imputed that amount on the notes given for the principal, and asks that the imputation be made pro rata on those notes and the interest notes which fell due at the same time.
There is no error in this part of the judgment; the payments were properly imputed to the notes which bear interest.
This ease was submitted to us without argument, on the part of the defendant ; this circumstance has contributed to delay the decision.
It is ordered, that the judgment in this case be reversed; it is further ordered, that there be judgment in favor of the plaintiff, and against the defendant, for the sum of seventy-four thousand and seventy-three dollars fifty-one cents, with interest at the rate of ten per cent per annpm on tne following portions thereof, from the following dates, to wit: on $1306 95, from the 26th of May, 1841, until paid; on $5000, from the 4th of March, 1842, till paid ; on $5000, from the 4th of March, 1843, till paid; on $5000, from the 4th of March, 1844, till paid ; on $5000, from the 4th of March, 1845, till paid; on $5000, from the 4th of March, 1846, till paid; on $5000, from the 4th of March, 1847, till paid ; on $5000, from the 4th of March, 1848, till paid. It is further ordered, that all the property purchased by the defendant be seized, under the vendor’s privilege, and the property specially mortgaged under the mortgage; the mortgage and privilege bearing date 3d day of February, 1836, and having been duly re-inscribed on the 22d day of November, 1845, and that both be sold to satisfy this judgment, and the other installments of the price which had not matured when the present action was brought, according to the terms of the contract; to wit, the sum of $57 600, as follows: $5000, with ten per cent interest per annum, from 4th March, 1849, till paid; $2800, due 4th March, 1849, without interest; $5000, with ten percent per annum interest, from 4th March, 1850, till paid ; $2450, due 4th of March, 1850, without interest; $5000, with ten per cent per annum interest, *621 from 4th March, 1851, till paid; $2100, due 4th March, 1851, without interest; $5000, with ten per cent per annum interest, from March, 1852, till paid; $1750, due 4th March, 1852, without interest; $5000, with ten per cent per annum interest, from 4th March, 1853, till paid ; $1400, due 4th March, 1853, without interest; $5000, with ten per cent per annum interest, from 4th March, 1854, till paid; $1050, due 4th March, 1854, without interest; .$5000, with ten per cent per annum interest, from 4th March, 1855, till paid; $700, due 4th March, 1855, without interest; $5000, with ten per cent per annum interest, from 4th March, 1856, till paid ; $350, due 4th March, 1856, without interest; $5000, with ten per cent per annum interest, from 5th March, 1857, till paid. It is further ordered, that the defendant pay the costs in both courts.

Hon. George Eustis, C. J., was not present during this term.